ALEXANDER MONTGOMERY, CITY TREASURER v. STATE OF MIS-
SIPPI EX REL. CITY OF JACKSON.

[52 South. 357.]

MUNICIPALITIES.    *Code* 1906, § 3316.    *City depositories.    Ordinance pro-
viding.*

An ordinance of a municipality establishing a municipal depository,
fixing security to be given by and interest to be paid by it,
directing the municipal treasurer to deposit funds with it, and
relieving him, when he has done so, from responsibility for the
funds, is authorized by Code 1906, § 3316, providing that the
mayor and board of aldermen shall have the care and control
of the municipality, its property and franchises.

FROM the circuit court of, first district, Hinds county.

HON. WILEY H. POTTER, Judge.

The State, ex rel. City of Jackson, appellee, was plaintiff in
the court below; Montgomery, treasurer of the City of Jackson,
was defendant there.    From a judgment directing the issuance
of a mandamus requiring defendant, the city treasurer, to de-
posit the funds of the city in depositories provided for by an
ordinance, the defendant appealed to the supreme court.    It will
be observed that the court in no way approved that part of the
ordinance which the counsel for appellee conceded to be invalid,
and that the judgment affirmed did nothing more than direct
deposits to be made as provided in the ordinance.    The ordin-
ance was and is as follows:

"An ordinance providing for the establishment of city de-
positories, fixing securities, and mode of determining interest
rates.

"Section 1. Be it ordained by the mayor and board of alder-
men of the city of Jackson, Miss.: The city treasurer shall de-
posit and at all times keep on deposit in the state or national

banks, or some of them doing business in the city the amount of money in his hands belonging to the several funds in the city treasury, and any such bank may apply for the privilege of keeping on deposit such funds or some part thereof. All such deposits shall be subject to payment when demanded by the city clerk on his warrant countersigned by the mayor and any bank, receiving and holding such deposits as aforesaid, shall be required to pay, and shall pay to the city for the privilege of holding the same, not less than the amount agreed upon, the amount so deposited, as herein provided.

"Sec. 2. Any bank in the city may qualify as a city depository by placing on deposit as security with the city treasurer any of the following securities in a sum ten per cent. greater than the maximum amount that shall be placed there at any one time for deposit, to wit: Mississippi registered state bonds; Yazoo & Mississippi delta levee bonds; Mississippi levee district bonds, county bonds of counties in Mississippi; United States bonds, or surety bonds of any surety company authorized to do business in the state of Mississippi.

"Sec. 3. The mayor, the treasurer and the chairman of the finance committee shall immediately after the passage of this ordinance, give five days' notice in writing to all banks in the city, of the provisions of this ordinance, and receive such proposals as they, or any of them may make for the privilege of keeping any part of the city funds, and the security proposed, and the officers shall place the deposits with the banks proposing the best terms, having in view the safety of such funds, provided, that no more than fifty per cent of the amount, for which a bank was assessed [for] city taxes the preceding year, shall be deposited with any bank, and the terms made with each depository shall remain in force for one year. Said officers shall, in like manner, on the first day of February in each year, or as soon thereafter as practicable, renew such contracts, or make new.

contracts, for the succeeding year, the first contracts made under this ordinance, however, shall end February first 1910.

"Sec. 4. After a bank has in every respect complied with the law, and shall have placed security as required, the mayor, the treasurer, and the chairman of the finance committee, shall issue to such depositories a commission.

"Sec. 5. The amount to be paid by any and all banks under the provisions of this ordinance, for the privilege of keeping such public funds on deposit, shall be computed on the average daily balance of the city money kept on deposit therewith, and there be credited and paid to the city quarterly, on the first day of May, first day of August, first day of November, and the first day of February of each year, and such depository shall quarterly render a statement in duplicate to the city treasurer and the mayor and board of aldermen showing the amounts so credited. The city treasurer shall require accounts of all money deposited and when deposited, and each depository shall render at each regular meeting of the board a statement, showing the balance of the city's money held by it, all sums paid to the city for the privilege of keeping such money on deposit as aforesaid, shall be credited by the treasurer to the account of the several funds entitled thereto.

"Sec. 6. In the event of the failure of any city depository to pay any city warrant, lawfully issued on any funds on deposit belonging to the city in such depository, the treasurer shall sell such securities as are placed with him by such depository, or so much thereof as is necessary to cover back into the city treasury, the amount of city funds on deposit, with accrued interest thereon, and the sale of such security shall be made by the treasurer at the best price he can obtain, at either public or private sale, and in the event of the failure of a city depository to pay such warrant, when such depository has placed as security,

a surety bond, the treasurer shall notify the city attorney, and that officer shall take such immediate action as he may deem most expedient for recovering back into the treasury, all city money on deposit in such depository.

"Sec. 7. The city treasurer shall deposit as nearly as practicable, the same amount in each depository, and the clerk shall draw warrant with a view of drawing as nearly as practicable the same amount from each depository.

"Sec. 8. Each depository shall pay the premium of surety bond offered for security.

"Sec. 9. The payment of the city funds into any designated depository shall relieve the treasurer and the sureties on his official bond from any further liability or responsibility therefor.

"Sec. 10. This ordinance to be in effect from and after its passage."

*Williamson & Wells,* for appellant.

It is conceded and must be conceded, that the legislature of the state has not specifically granted power to the city to pass the ordinance in question in this case. If the city has such power, it must necessarily be implied from the grant by the legislature of a general power, which general power cannot be properly exercised without resorting to an implied authority under the general power.

The Constitution of Mississippi leaves in the legislature the full control of counties and municipalities with certain mandatory sections which direct the legislature with reference to legislation for the organization and government of municipalities, to wit: Section 88 of the Constitution requires the legislature to pass general laws under which cities and towns may be chartered and their charters amended. Section 80 requires that pro-

vision shall be made by general laws, to prevent cities, towns, etc., from abusing their powers of assessment, taxation, borrowing money and contracting debts.

Looking to the chapter on municipalities, we find that by Code 1906, § 3375, the legislature has provided clearly that the officers of every municipality shall be a mayor, a marshal, a tax collector, treasurer, clerk, and three commissioners, and that all these, except the aldermen, shall be elected by a majority of the qualified electors.

The legislature then proceeds in the subsequent sections to prescribe the duties of each of these officers. Code 1906, § 3396, provides that the treasurer "shall receive and safely keep and pay out according to law, all moneys belonging to the municipality" * * * and shall pay out money only on warrant issued by the order of the mayor and board of aldermen."

This section also requires of the treasurer to keep correct and accurate accounts of receipts and disbursements, to make report in writing at each regular meeting of the board of aldermen, then adds "and shall perform all other duties that may be prescribed by ordinance."

Surely it cannot be contended that any ordinance of a municipality which is in conflict with this section of the code is valid and binding. Whence can it be implied that the board of aldermen has the authority or power to pass the ordinance in question. The fact that the legislature in Code 1906, § 3316, enacted that the mayor and board of aldermen of a city shall have the care, management and control of the city and its property and finances does not authorize the mayor and board of aldermen to abolish the treasurer's office by an ordinance and put the duties which the legislature in the charter of the city imposes upon the treasurer upon the banks which happen to be doing business in the city.

It is universally held by authorities, that with the exception

of constitutional limitations, the power of the legislature over municipalities, is supreme.    It may be changed, divided, or even abolished as the legislature may deem best. *Dartsmouth College v. Woodward,* 17 U. S. 518; *Garrard v. Philadelphia,* 74 U. S. 1; Dillon, Municipal Corporations, 139; *Martin v. Dix,* 52 Miss. 53.

The ordinance in question in this case goes far beyond any authority given in the chapter on municipalities and absolutely undertakes to abolish the treasurer's office and to put into other hands the matter of receiving and keeping the funds of the city. The court will observe that the ordinance in question requires that the city treasurer shall deposit and at all times keep on deposit in the state or national banks, or some of them doing business in the city, the amount of money in his hands belonging to the several current funds of the city treasury, and then it provides that said funds deposited around in the several banks at an interest to be agreed upon, shall be subjected to payment, when demanded by the city clerk on his warrant, countersigned by the mayor.    This leaves the treasurer out of consideration, and the depository is made to perform the duties which the chapter on municipalities requires of the treasurer.

The court will see on examination of that chapter, that the treasurer is not allowed to pay out any money of the city, except on a warrant ordered by the proper municipal ordinance or order.

The ordinance in question in this case requires the depository to pay out the money when demanded by the clerk on his warrant, countersigned by the mayor, when Code 1906, § 3379, provides that the mayor shall sign all warrants drawn on the city treasurer for money and requires the clerk to attest the same and affix thereon the seal of the municipality and to keep an accurate record thereof in a well bound book to be kept for that purpose so that the mayor must draw the warrant and the

clerk attest it; whereas the ordinance in question requires the money to be paid by the depository, upon the clerk's warrant countersigned by the mayor.

The law also provides that a warrant shall contain, being section 3402, which provides that every warrant drawn on the city treasurer shall express on its face, to whom issued, for what purpose allowed, and the ordinance authorizing its issuance, shall be cited by minute book and page in or upon it, and the treasurer is required to see that every warrant paid out of the treasury is in compliance with this section and he is responsible on his bond, and also perhaps under the criminal statutes, for paying out money on a warrant that does not comply with this so that the court sees that this ordinance in question in this case is taking away from the treasurer, the duties which the law imposes upon his as treasurer of the city, and the mayor and board of aldermen evidently conceived the idea that this was relieving the treasurer of these duties, so that in section 9 of the ordinance in question, it provides that the payment of the city funds into a designated depository shall relieve the treasurer and the sureties on his official bond, from any further liability or responsibility therefor.

This is clearly against the law and is undertaking to relieve the treasurer of the duties which are imposed directly upon him by law.

Nothing but an act of the legislature, amending or repealing the law providing for the election of a treasurer, and prescribing his duties and authorizing and empowering the mayor and board of aldermen to pass an ordinance like this will make such an act on the part of the mayor and board of aldermen valid and binding.

*Potter & Thomson* and *William Hemingway*, city attorney, for appellee.

So far and only so far as the ordinance in question directs

municipal warrants to be drawn directly on the depositories it is contrary to the state statute and therefore void in view of the fact that the statute has prescribed how, and in what manner, such municipal warrants are to be drawn.    The method of drawing money out of the depositories is a mere matter of detail, and it is fixed by the statute that such warrants must be drawn on the treasurer and of course this ordinance cannot change that. And in so far as this detail is concerned the ordinance is unenforceable and warrants must be drawn directly on the municipal treasury as now provided by law.    It is a rule of law so well established that no citation of authorities are needed to sustain it, that where an ordinance is valid in part and void in part, that the valid part will stand and the void part fail unless the valid part and the void part are so inextricably blended with each other that the court would be in doubt as to whether the valid part would have passed the law making body had it been considered alone and not in connection with the void part.    The purpose for which this ordinance was passed was to establish a depository thereby making municipal funds safe and at the same time securing to the municipality a goodly source of revenue.    If this ordinance is declared valid by the court, warrants will be drawn upon the treasurer as now provided by statute, and in the same manner that state warrants are now drawn on the state treasurer and the municipal treasurer will draw his check on the depositories.

The real question to be determined in this case is whether the legislature has granted the mayor and board of aldermen of the city of Jackson the power to direct the city treasurer where to place the city funds on deposit.    Without such grant of power, to said board, this suit must necessarily fail.    In the beginning it must be conceded that there is no such particular grant of power and it only remains to be determined whether such grant has been conferred by general grants or is necessarily implied from such grants.

We contend that the city of Jackson, acting through its mayor and board of aldermen has derived the power from three distinct sources to pass this ordinance: First, incidental to the right of ownership, as proprietor of its own funds, the city of Jackson, acting through its mayor and board of aldermen, has the right to direct the treasurer of its funds where he shall deposit them; second, Jackson operates under the code chapter, entitled "Municipalities," and Code 1906, § 3316, gives to the mayor and board of aldermen the care, management and control, among other things, of the property and finances of the city; third, Code 1906, § 3331, gives to the mayor and board of aldermen of municipalities the right, among other powers conferred by said section, to prescribe the duties of all officers and employes.

From the foregoing grants of power, above enumerated, we feel that we are safe in asserting that the power has been conferred on the mayor and board of aldermen to pass the ordinance in controversy, unless the right to name the depository of the city funds has been conferred on some other department of the city government, or on some other city official by the legislature. An examination of the code chapter on municipalities will show that such power has not been conferred on any department, or official, by particular grant. The only section, with the exception of the sections above referred to, that has any reference to this subject, is the section defining, or rather prescribing, the duties of the treasurer, and is Code 1906, § 3396. Under that section "the treasurer shall receive, safely keep and pay out according to law, all monies belonging to the municipalities," and that section provides that the treasurer shall perform such other duties as the mayor and board of aldermen may prescribe. We find in this no word or syllable that can by the most constrained construction be interpreted into meaning that the treasurer is thereby given the right and power to designate the place where he shall keep the funds belonging to the city. It is true

that he is given the power to keep the funds, but this section does not confer on him the discretion as to where such funds shall be kept; and as this section is silent with reference to the place where the municipal funds shall be kept, we earnestly contend that necessarily the owner of the funds, the municipality, acting as it must, through its mayor and board of aldermen, incidental to the full and free enjoyment of its property rights and in furtherance of the purposes of its existence, has the right to determine where the treasurer shall keep the funds, which the law requires him to keep.

It might be contended, with some force, that in view of the fact, that in legal contemplation, a deposit in a bank is a loan to the bank, that such deposit would be a loan of the city's funds to the bank, and that he would thereby be deprived of the right conferred upon him by law, to receive and safely keep the funds belonging to the city. While for some purposes a deposit in a bank is a loan to the bank, in the sense we are now to consider it, such deposit is not a loan, but, in the contemplation of law, the treasurer has the funds of the municipality in his own possession, when he has them deposited in a solvent bank, to his credit as treasurer. We believe, too, that where the ordinances are silent as to where the treasurer may deposit the municipal funds, it is necessarily in his discretion to choose the depository, and we believe under such circumstances, he has the right to place the municipal funds in a bank of his own choosing, but for whose solvency he is responsible.

We are confirmed in this belief, since the legislature recognizing the universal custom of public officials to deposit the public funds in their hands in banks, has provided that the state, county or municipalities shall have a first lien on the assets of a bank for the public funds therein kept on deposit and in view, too, of the fact that the only safe way to keep large sums of money especially where no vault is provided at public ex-

pense, is in a solvent bank and though this has been the custom, universal and well known, among the custodians of public funds, the legislature has enacted no statute forbidding public officials from making such deposits, so we reiterate that it is undoubtedly the law that the treasurer, keeping public funds on deposit in a bank, has them in his own possession, within the meaning of the statute.

MAYES, C. J., delivered the opinion of the court.

On the 1st day of June, 1909, the mayor and board of aldermen of the city of Jackson adopted an ordinance providing for the establishment of city depositories, fixing securities, and prescribing the mode of determining the interest rates. It is unnecessary to set out the ordinance, since there can be no legal objection to its practical operation, if the city authorities had the power to pass it. After adopting this ordinance creating the depositories in the manner provided by it, and fixing interest rates to be paid, the mayor and board of aldermen directed the city treasurer to turn over the funds to the depositories in accordance with the provisions of the ordinance, which the treasurer declined to do, asserting that the ordinance was void, and the mayor and board of aldermen without power to pass same. Whereupon the city instituted mandamus proceedings to compel obedience to the ordinance by the treasurer. A demurrer was filed to this petition, which practically makes this issue. The case was heard, and the demurrer was overruled, and the defendant declined to plead further. Whereupon the trial judge issued the writ of mandamus, commanding the treasurer to obey the ordinance and pay over the money in accordance with same. From this judgment an appeal is prosecuted here.

In the case of *State v. Edwards,* 93 Miss. 704, 46 South. 964, the constitutionality of the state depositories was upheld. The above case simply settles the proposition that, wherever there is

authority to pass such law, the law violates no constitutional provision. The mayor and board of aldermen constitute the legislative power of the cities, towns, and villages which they represent and are vested with full power to pass any and all ordinances which are not repugnant to the laws of the state. This power is expressly given them by Code 1906, § 3316. By this same section the mayor and board of aldermen are given the full care, management, and control of the property and finances of the city, town, or village which they represent. Under the above section the mayor and board of aldermen are vested with as complete authority over the property and finances of the city as the legislature is of the property and finances of the state, and they may do all things, consistent with the laws of the state, which they deem necessary to the care of the finances of the city, or to the best interest of the inhabitants, who are the real owners of the funds. The state has approved of this method of dealing with its finances, and, instead of having its funds lie idle in the vaults of the treasury, they are loaned out and create a revenue for the people of the state. The city has undertaken to do the same with the city's funds, and in so doing is well within its power. The ordinance provides that when the treasurer shall obey its provisions he shall be relieved from any further responsibility for the funds. When he has paid the money into the depositories, he has acted in obedience to the lawful authority, and made a proper disposition of the funds, and, of course, he cannot be longer held responsible.

We can see no objection to this ordinance, and the judgment of the court below is *affirmed*.